IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **GINA REGINA MOORE,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**T. HARPY HOME BUYERS, LLC D/B/A READY DOOR HOMES**, a Tennessee registered company,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Gina Regina Moore ("Plaintiff Moore" or "Moore") brings this Class Action Complaint and Demand for Jury Trial against Defendant T. Harpy Home Buyers, LLC d/b/a Ready Door Homes ("Defendant" or "Ready Door Homes") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by placing unsolicited calls to phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Moore, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### PARTIES

1. Plaintiff Moore is a resident of Memphis, Tennessee.

2. Defendant Ready Door Homes is a Tennessee registered company headquartered in Memphis, Tennessee. Defendant Ready Door Homes conducts business throughout this District.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant because the Defendant is located in this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant is located in this District and directed the violative conduct from this District to the Plaintiff who also resides in this District.

## INTRODUCTION

6. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. According to online robocall tracking service "YouMail," 4.8 billion robocalls were placed in March 2025 alone, at a rate of 155.0 million per day. www.robocallindex.com (last visited April 29, 2025).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

14. T. Harpy Home Buyers LLC operates under the d/b/a Ready Door Homes.[3]

15. Defendant Ready Door Homes provides a home buying service to consumers in Tennessee.[4]

16. Defendant Ready Door Homes places calls to solicit its home buying service.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://tncab.tnsos.gov/business-entity-search
[4] https://www.readydoorhomes.com/about-us

17. From its beginning, Ready Door Homes has relied on placing cold calls to generate business, as per the company owner Jonathan Wiener:



---

[5] https://www.instagram.com/p/CWJsKFrgZJV/
[6] https://www.instagram.com/p/CWmbQ06s2vf/

4

18. In an interview,[7] Wiener discussed the success of Ready Door Homes and stated, "We're doing cold calling very heavily. I mean, we're really good at cold calling. I mean, that's kind of our bread and butter."[8]

19. Wiener then went on to say, "Like, cold calls, like, great. We can get 15, 17 deals a month…"[9]

20. Defendant Ready Door Homes places telemarketing calls to consumer phone numbers that are registered on the DNC, as per Plaintiff's experience.

21. The calls that Ready Door Homes' places to consumer phone numbers are solicitations.

22. Ready Door Homes is open about how it determines a cash offer for a consumer, explaining that it deducts from property value the cost of repairs/renovations, the cost to resell the property and the need to generate approximately 10% in profit from the value of the home:

| Our Formula | |
|---|---|
| ARV | After Repair Value. This is what we expect the home to sell for after we've fixed it up. |
| – Repair Budget | This is how much we estimate the renovation to cost us. |
| – Costs to Resell | Unfortunately, when we resell, we have to pay agent fees. Typical real estate commissions are 6-7%, and closing costs (title and escrow fees) are another 1-2% and other taxes can be roughly 1-2%. We expect this to wind up around 10%. |
| – Profit | Don't let our transparency surprise you, we wouldn't be able to remain operational without turning a profit. Our profit are usually around 10% of the selling price (ARV). |
| Your Cash Offer | This is how much we can give you for your home on the closing date of your choice. No hidden fees, commissions or anything. This number is exactly how much we pay your for your house. |

[10]

23. Ready Door Homes compares selling a home through an agent versus selling through its company, revealing that the consumer will receive less compensation for their property:

---

[7] https://vimeo.com/1011062868
[8] Id. – 15 seconds
[9] Id. – 4 minutes, 2 seconds
[10] https://www.readydoorhomes.com/how-it-works

|  | Selling to Us |  | Listing with an Agent |
|---|---|---|---|
| Commissions and closing costs? | ✓ 0% | ✗ | More than 6% |
| How long does it take to close? | ✓ Within 10 Days | ✗ | Usually 45-90 Days |
| Do I need to clean or make repairs to my home? | ✓ Never! | ✗ | Always |
| Does my home get listed on the MLS? | ✓ Never! | ✗ | Usually |
| Can the deal fall through due to financing? | ✓ Never! | ✗ | Frequently |

[11]

24. Based on what Ready Door Homes has stated, this chart illustrates the higher cost in selling to Ready Door Homes versus selling a property through a real estate agent, assuming that there is no cost for repairs/renovations:

| Property For Sale | | |
|---|---|---|
|  | Ready Door Homes | Realtor |
| Commissions and Closings | 0% | 6% + |
| Repairs | 0% | 0% |
| Costs to Resell | 10% | 0% |
| Profit | 10% | 0% |
| Total Costs | 20% | 6% + |

25. As a result of the above, the calls that Ready Door Homes places are solicitations because the consumer is incurring a cost based on selling the property for less, which is 20% or more less than the market value.

26. In response to these phone calls, Plaintiff Moore brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Class and costs.

### PLAINTIFF MOORE'S ALLEGATIONS

27. Plaintiff Moore is the sole owner and user of her cell phone number ending in 6390.

---

[11] Id.

6

28. Plaintiff Moore has owned her cell phone number for over 20 years.

29. Plaintiff Moore registered her cell phone number on the DNC on December 16, 2004.

30. Plaintiff Moore uses her cell phone number for personal use only as one would use a landline telephone number in a home. She has never had her cell phone number associated with a business.

31. Plaintiff Moore's cell phone number is registered under her personal name and is not reimbursed by any business.

32. On March 21, 2025 at 4:02 PM, Plaintiff Moore received an unsolicited call to her cell phone from 901-256-2260.

33. When Plaintiff Moore answered this call, the caller said that she was calling to give a cash offer for Plaintiff's property and asked if Plaintiff was looking to sell her property.

34. Plaintiff recognized the voice of the caller from past calls and asked which company the caller works for to try and identify the company name so she could ask them to stop calling. The caller said that she works for a group of local investors.

35. Plaintiff told the agent that she would not provide any information without knowing who she was speaking to, in order to confirm the name of the company.

36. The caller said that she would have her boss call Plaintiff's cell phone, to which Plaintiff answered that her property is not for sale.

37. The caller tried to overcome Plaintiff's objection by offering to text over some information, but Plaintiff said that she could not afford the current interest rates and said that she is not interested in moving.

7

38. The caller asked Plaintiff if she owns any other properties, to which Plaintiff answered that she does not.

39. On March 24, 2025, Plaintiff Moore received an unsolicited call to her cell phone from 501-501-6950.

40. This call was not answered, but a voicemail was left by "Kimblery with Ready Door" again offering Ready Door's services.

41. On March 25, 2025 at 1:45 PM, Plaintiff received an unsolicited call to her cell phone from 901-668-8301.

42. When Plaintiff answered this call, Kimberly introduced herself and said that she was calling from a local cash offer company, which she later identified as Ready Door.

43. Plaintiff Moore asked how Defendant acquired her contact information and was told it was from property records.

44. Plaintiff ended the call by repeating that she is not interested in selling her property.

45. Plaintiff Moore has never done business with Ready Door Homes or consented to be called by them.

46. The unauthorized solicitation calls that Plaintiff received from or on behalf of Defendant have harmed Plaintiff Moore in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

47. Seeking redress for these injuries, Plaintiff Moore, on behalf of herself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

48. Plaintiff Moore brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Ready Door Homes called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.

49. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Moore anticipates the need to amend the Class definition following appropriate discovery.

50. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

51. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendant Ready Door Homes placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(b) whether the calls constitute a violation of the TCPA;

 (c) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

52. **Adequate Representation**: Plaintiff Moore will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Moore has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Moore and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Moore nor her counsel have any interest adverse to the Class.

53. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Moore. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Moore and the Do Not Call Registry Class)

54. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

55. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

56. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

57. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Moore and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

58. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Moore and the Do Not Call Registry Class received more than one call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

59. As a result of Defendant's conduct as alleged herein, Plaintiff Moore and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are

11

entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

60.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Moore requests a jury trial.

**GINA REGINA MOORE**, individually and on behalf of all others similarly situated,

DATED this 29th day of May, 2025.

>By: /s/ *Bradley G. Kirk*
>
>Bradley G. Kirk
>bgkirklaw@gmail.com
>Attorney at Law
>1910 Madison Avenue, #112
>Memphis, TN 38104
>(901) 206-6163
>
>Avi R. Kaufman
>kaufman@kaufmanpa.com
>KAUFMAN P.A.
>237 S Dixie Hwy, Floor 4
>Coral Gables, FL 33133
>Telephone: (305) 469-5881
>
>*Attorneys for Plaintiff and the putative Class*